ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| EL PUEBLO DE PUERTO RICO<br><br>Apelado<br><br>v.<br><br>RUBÉN JARA LÓPEZ<br><br>Apelante | KLAN202500010 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Caso Núm.: JEC2024G0048 y JEC2024G0049<br><br>Sobre: Art. 127-B (2) Código Penal 2012 |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de enero de 2026.

Comparece la parte apelante, el Sr. Rubén Jara López, quien impugna las *Sentencias* emitidas en su contra el 10 de diciembre de 2024, por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI). Por virtud de los referidos pronunciamientos, el apelante fue condenado a cumplir seis (6) años de prisión, luego de que fuera juzgado por un tribunal de derecho y encontrado culpable mediante los respectivos fallos dictados el 21 de octubre de 2024.

**I.**

El Ministerio Público presentó **dos (2) denuncias** en contra del señor Jara López, por hechos acontecidos el 3 y 5 de agosto de 2024, en Villalba, Puerto Rico. Imputó sendas violaciones al Artículo 127-B del Código Penal de 2012, *Maltrato a personas de edad avanzada mediante amenaza, infra.*[1] El TPI encontró causa para arresto en ambos delitos e impuso una fianza global de $10,000.00.[2] Celebrada la vista preliminar el 11 de septiembre de 2024,[3] el TPI autorizó al Ministerio

---

[1] Véanse, Autos JEC2024G0048, pág. 3 y JEC2024G0049, pág. 2.
[2] Autos JEC2024G0048, págs. 6-9.
[3] Autos JEC2024G0048, págs. 20-21.

Público a presentar las siguientes **dos (2) acusaciones** contra el señor Jara López:[4]

### JEC2024G0048

EL REFERIDO ACUSADO, RUBÉN JARA LÓPEZ, PARA EL 3 DE AGOSTO DE 2024 A ESO DE LAS 10:00 A.M. Y EN VILLALBA, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE PONCE, A PROPÓSITO Y CON CONOCIMIENTO, AMENAZÓ CON CAUSARLE UN DAÑO DETERMINADO AL SEÑOR ELISIO COLÓN RIVERA DE , [*sic*] DE 70 AÑOS PERSONA DE EDAD AVANZADA CONSISTENTE EN QUE LE GRITÓ: "MIRA SO CABRÓN, TE VOY A MATAR Y VA A SER PRONTO". SINTIENDO ÉSTE TEMOR POR SU VIDA Y SEGURIDAD.

### JEC2024G0049

EL REFERIDO ACUSADO, RUBÉN JARA LÓPEZ, PARA EL 5 DE AGOSTO DE 2024 A ESO DE LAS 12:00 P.M. Y EN VILLALBA, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE PONCE, A PROPÓSITO Y CON CONOCIMIENTO, AMENAZÓ CON CAUSARLE UN DAÑO DETERMINADO AL SEÑOR ELISIO COLÓN RIVERA DE , [*sic*] DE 70 AÑOS PERSONA DE EDAD AVANZADA CONSISTENTE EN QUE LE GRITÓ: "MIRA SO CABRÓN, TE VOY A MATAR Y VA A SER PRONTO". SINTIENDO ÉSTE TEMOR POR SU VIDA Y SEGURIDAD.

La lectura de acusación se celebró el 19 de septiembre de 2024, ocasión en que el apelante solicitó el término reglamentario para registrar su alegación.[5] El 21 de octubre de 2024, a través de su representación legal, formuló una **alegación de no culpable**.[6] Asimismo, el señor Jara López **renunció al juicio por jurado**. El TPI examinó bajo juramento al apelante y determinó que la renuncia fue libre, voluntaria e inteligente, por lo que dispuso la continuación de los procedimientos por el tribunal de derecho.[7]

En la misma fecha, se celebró el **juicio en su fondo**. En apoyo a las acusaciones, el Ministerio Público presentó como testigos al Sr. Elisio Colón Rivera (señor Colón Rivera) y al Agte. Noel Rentas Barrios (agente Rentas Barrios). Ponderada la totalidad de la prueba

[4] Véanse, Autos JEC2024G0048, pág. 23 y JEC2024G0049, pág. 6.
[5] Autos JEC2024G0048, pág. 27.
[6] Autos JEC2024G0048, pág. 49.
[7] Autos JEC2024G0048, págs. 47-49.

vertida, el 21 de octubre de 2024, el TPI emitió sendos **fallos de culpabilidad** contra el señor Jara López por los dos cargos imputados.[8]

El 3 de diciembre de 2024, el Técnico de Servicio Sociopenal, Raúl Reyes Font, bajo la supervisión de Edna Martínez Rivera, sometió al TPI el *Informe Pre-Sentencia*.[9] Posteriormente, el 10 de diciembre de 2024, el TPI condenó al apelante a extinguir las siguientes **sentencias carcelarias**:[10]

| Art. 127-B Código Penal JEC2024G0048 | 6 años | Concurrente |
|---|---|---|
| Art. 127-B Código Penal JEC2024G0049 | 6 años | Concurrente |

Insatisfecho con el resultado, el 3 de enero de 2025, el señor Jara López presentó una *Apelación Criminal*. Señaló la comisión de los siguientes errores:[11]

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL EMITIR UN FALLO DE CULPABILIDAD EN VIRTUD DE UNA PRUEBA QUE NO DERROTÓ LA PRESUNCIÓN DE INOCENCIA Y MUCHO MENOS ESTABLECIÓ LA CULPABILIDAD DEL ACUSADO MÁS ALLÁ DE DUDA RAZONABLE.
>
> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CULPABLE AL ACUSADO CON PRUEBA INSUFICIENTE EN DERECHO.
>
> ABUSÓ DE SU DESCRECIÓN EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA PENA ALTERNA A LA PENA DE RECLUSIÓN A PESAR DE HABERSE RECOMENDADO FAVORABLEMENTE EN EL INFORME DE PRESENTENCIA, LO QUE CONTRAVIENE EL DERECHO CONSTITUCIONAL A LA REHABILITACIÓN DEL APELANTE CONSAGRADO EN LA SECCIÓN 19 DEL ARTÍCULO VI DE LA CONSTITUCIÓN DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO.

[8] Autos JEC2024G0048, pág. 49 (reverso). Refiérase, además, a la regrabación del juicio celebrado el 21 de octubre de 2024, 1:07:00 y a la *Moción para proponer enmiendas a la transcripción de la prueba oral.*
[9] A petición de la parte apelante, el 14 de octubre de 2025, ordenamos al TPI a elevar el *Informe Pre-Sentencia* y lo unimos al expediente del caso.
[10] Véanse, Autos JEC2024G0048, págs. 50-51 y JEC2024G0049, pág. 12. El TPI eximió al apelante del pago del arancel especial estatuido en la Ley Núm. 183 de 29 de julio de 1998, *Ley de Compensación y Servicios a las Víctimas y Testigos de Delito,* 25 LPRA sec. 981 *et seq.*
[11] Transcribimos los errores planteados en el *Alegato del Apelante*, distintos a los de la *Apelación Criminal*, ya que el señor Jara López no renunció a presentar errores adicionales de Derecho, tras la debida evaluación del expediente y la totalidad de la prueba oral desfilada durante el juicio en su fondo, al amparo de *Henderson v. US,* 133 S Ct. 1121 (2013) y *Pueblo v. Soto Ríos,* 95 DPR 483 (1967).

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER AL APELANTE LA PENA DE RECLUSIÓN DE SEIS AÑOS EN CONTRAVENCIÓN DE LA CLÁUSULA CONSTITUCIONAL CONTRA LOS CASTIGOS CRUELES E INUSITADOS.

Atendidos los trámites de rigor, incluyendo la concesión de las prórrogas solicitadas, el 12 de noviembre de 2025, el señor Jara López instó el *Alegato del Apelante*. Por conducto de la Oficina del Procurador General, el 12 de diciembre de 2025, se presentó *Alegato de El Pueblo de Puerto Rico*. Con el beneficio de ambas comparecencias, los Autos Originales, incluyendo el *Informe Pre-Sentencia*, la regrabación de la vista en su fondo celebrada el 21 de octubre de 2024 y la transcripción de la prueba oral de oficio,[12] estamos en disposición de resolver las controversias planteadas.

## II.

### A.

#### (i)

La Constitución de Puerto Rico establece como derecho fundamental que a toda persona acusada de delito le cobija la presunción de inocencia. Art. II, Sec. 11, Const. PR, LPRA Tomo 1. Por consiguiente, para emitir un fallo de culpabilidad, **el Ministerio Público tiene la carga probatoria para demostrar, más allá de duda razonable, todos los elementos del delito y su conexión con la persona acusada**. *Pueblo v. Toro Martínez*, 200 DPR 834; 856 (2018); *Pueblo v. García Colón I*, 182 DPR 129, 174 (2011); *Pueblo v. Santiago et al.*, 176 DPR 133, 143 (2009). Claro, lo anterior no equivale a que se tenga que probar la culpabilidad del acusado con certeza matemática. *Pueblo v. Toro Martínez, supra,* pág. 856; *Pueblo v. Maisonave Rodríguez,* 129 DPR 49, 71 (1991). Para determinar que la prueba controvierte la presunción de inocencia, se exige prueba satisfactoria y suficiente en derecho. *Pueblo v. Toro Martínez, supra,* pág. 856; *Pueblo*

---

[12] A la Transcripción de la Prueba Oral (TPO) se integraron correcciones ortográficas y las enmiendas según presentadas por las partes del título el 9 y 10 de julio de 2025.

*v. García Colón I, supra,* págs. 174-175. Es decir, la norma de suficiencia de la prueba, según la Regla 110 de Procedimiento Criminal,[13] conlleva que se absuelva al acusado si existe duda razonable luego de un estudio de la totalidad de la evidencia. La prueba que justifique una convicción tiene que ser satisfactoria, de modo que "produzca la certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido". *Pueblo v. Acevedo Estrada,* 150 DPR 84, 100 (2000). Esto significa que, si la prueba admitida por el acusador produce insatisfacción en el ánimo del juzgador, entonces, existe duda razonable y fundada. *Pueblo v. Cabán Torres,* 117 DPR 645, 652 (1986). En atención a este principio, los foros apelativos debemos tener la misma satisfacción y tranquilidad al evaluar la prueba en su totalidad. *Pueblo v. Casillas, Torres,* 190 DPR 398, 415 (2014); *Pueblo v. Colón Burgos,* 140 DPR 564, 581 (1996).

Como se sabe, la presunción de inocencia asiste al acusado hasta el fallo de culpabilidad. En los remedios postsentencia, la carga de persuadir al tribunal recae en el acusado. E.L. Chiesa Aponte, *Procedimiento Criminal y la Constitución: Etapa Adjudicativa,* San Juan, Ediciones Situm, 2018, Sec. 4.3, pág. 154. "Recordemos que con el fallo de culpabilidad —mediante el cual se entenderán probados los delitos imputados más allá de duda razonable— acaba la presunción de inocencia y nace la presunción de corrección del dictamen". *Pueblo v. Arlequín Vélez,* 204 DPR 117, 149 (2020). Esto es así, porque la apreciación imparcial de la prueba que hagan los juzgadores de hechos merece respeto y confiabilidad. *Pueblo v. Rosario Cintrón,* 102 DPR 82, 83 (1974).

Además, las determinaciones de hechos probados que hizo el juzgador primario no se deben descartar arbitrariamente, a menos que, de la prueba admitida, surja que no existe base suficiente para

---

[13] 34 LPRA Ap. II, R. 110.

apoyarlas. *Pueblo v. Acevedo Estrada, supra*, pág. 99. A tales efectos, **sólo cederá la deferencia en etapa apelativa si: (1) hubo prejuicio, parcialidad o pasión, o (2) la prueba no concuerda con la realidad fáctica, es increíble o imposible**. *Pueblo v. De Jesús Mercado*, 188 DPR 467, 481 (2013). A estos fines, queda claro que la determinación de si se probó la culpabilidad del acusado más allá de duda razonable es un asunto de hecho y derecho, revisable en apelación. *Pueblo v. Torres Medina*, 211 DPR 950, 959 (2023); *Pueblo v. Irizarry*, 156 DPR 780, 788 (2002); *Pueblo v. Rivero, Lugo y Almodóvar*, 121 DPR 454, 472 (1988).

### (ii)

De otro lado, se conoce que nuestro esquema probatorio está revestido de deferencia a las determinaciones que hacen los juzgadores de primera instancia en cuanto a la prueba testifical, ya que ese foro está en mejor posición para aquilatarla. *Pueblo v. De Jesús Mercado*, *supra*, págs. 477-478. Así ha opinado nuestra alta curia:

> Como regla general, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad para sustituir las determinaciones del foro primario por sus propias apreciaciones. **Este Tribunal ha reafirmado que las determinaciones de hechos del Tribunal de Primera Instancia a las que sustente prueba oral merecen gran deferencia de los tribunales apelativos**. Ese axioma está basado en consideraciones lógicas, ya que el magistrado del foro primario es quien ha tenido la oportunidad de contactar directamente ese tipo de prueba. (Énfasis nuestro y citas suprimidas). *Id.*, pág. 478.

Al respecto, el Tribunal Supremo ha acotado que es "[e]l juez sentenciador, ante quien deponen los testigos, quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad". *Pueblo v. García Colón I, supra*, pág. 165. Es de esta manera, porque

> [t]ambién hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y, sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer incluso más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad: la observación. *Ortiz v. Cruz Pabón*, 103 DPR 939, 947 (1975).

Por ende, cuando convergen asuntos de suficiencia de la prueba y deferencia en cuanto a la apreciación de la prueba testifical, como foro apelativo, nos corresponde examinar si la determinación de credibilidad del foro de instancia rebasó los límites de la sana discreción judicial. Véase, *Pueblo v. De Jesús Mercado*, *supra*, pág. 484.

## B.

Por otro lado, el 8 de agosto de 2014, la Asamblea Legislativa aprobó la Ley Núm. 138-2014, dirigida a promulgar el interés apremiante del Estado en **garantizar la indemnidad de las personas de edad avanzada**. En su *Exposición de Motivos* se consignó lo siguiente:

. . . . . . . .

> **[S]e afirma el interés apremiante del Estado para garantizar el bienestar de las personas de edad avanzada** y mediante esta Ley se atienden sus intereses y necesidades especiales, así como que el respeto de sus derechos naturales e individuales. Además, se garantiza la protección de su salud física o mental y la de su propiedad por parte de cualquier persona natural, jurídica, entidad privada o del Estado. De esta manera, se afirman y fortalecen las responsabilidades de ofrecer a esta población una mejor calidad de vida y convivencia sin abuso, maltrato ni negligencia, para de esta forma **permitir el mejor bienestar y la protección integral** de la población a la que se pretende proteger mediante esta Ley. (Énfasis nuestro).

En lo pertinente, la Ley Núm. 138-2014 enmendó el Código Penal de 2012, 33 LPRA sec. 5001 *et seq*. A tales efectos, se incluyó el Artículo 127-B del Código Penal de 2012, *Maltrato a personas de edad avanzada mediante amenaza*, 33 LPRA sec. 5186b, vigente a los hechos criminales que nos atañen, el cual estatuye lo siguiente:

> Toda persona que **amenazare a una persona de edad avanzada con causarle daño determinado a su persona**, a otra persona o a los bienes apreciados por ésta será sancionada con **pena de reclusión por un término fijo de seis (6) años**.[14] (Énfasis nuestro).

El delito de *amenaza*, tipificado en el Artículo 177 del Código Penal de 2012, 33 LPRA sec. 5243, preceptúa que:

> Incurrirá en delito menos grave, toda persona que amenace a una o varias personas con causar un daño determinado a su persona o su familia, integridad corporal, derechos, honor o patrimonio.
>
> .     .     .     .     .     .     .     .

En esencia, la amenaza es la expresión intencional de que se llevará a cabo determinado daño contra otra persona. El delito se consuma cuando se profiere la amenaza. Los elementos del tipo son: (1) una manifestación expresa de voluntad, verbal o escrita, de causar un daño determinado a alguna persona determinada o a su familia; y (2) una apariencia de peligro e intranquilidad para el destinatario de la amenaza o quien la escucha. D. Nevares Muñiz, *Código Penal de Puerto Rico, Comentado*, Ed. 2019, Instituto para el Desarrollo del Derecho, pág. 281. En este aspecto, la profesora Nevares Muñiz ha comentado:

> El tipo legal limita el daño objeto de la amenaza a aquél que puede afectar al amenazado o a su familia, en su integridad corporal, derechos, honor o patrimonio. El daño que se amenaza causar tiene que ser específico y determinado.
>
> Si la persona no tiene capacidad para infligir el daño, no estamos propiamente ante una amenaza pues el destinatario de la misma no va a sentirse amenazado. La situación es similar cuando meramente se hace la expresión de un propósito criminal o de realizar una conducta ilícita, pero sin estar la misma dirigida a persona alguna o especificar un daño determinado. Tampoco hay delito, si la persona que amenaza llevar a cabo determinado acto tiene derecho a ejecutar el mismo jurídicamente. *Id.*, págs. 281-282.

---

[14] Cabe señalar que, el 26 de diciembre de 2014, se aprobó la Ley Núm. 246-2014, la cual incorporó múltiples enmiendas al Código Penal de 2012. No obstante, el estatuto no alteró el contenido del Artículo 127-B del Código Penal de 2012.

Por último, el Código Penal de 2012 define a la *persona de edad avanzada* o *adulto mayor* como aquella persona de **sesenta (60) años o más de edad**. Art. 14 del Cód. Penal, 33 LPRA 5414 (ii).[15]

### III.

Durante la vista en sus méritos del caso bajo examen, desfiló la siguiente prueba testifical.

### *Elisio Colón Rivera*

El señor Colón Rivera declaró que tenía setenta (70) años y estaba retirado.[16] Para el 3 de agosto de 2024, el testigo indicó que residía con la Sra. Lourdes López Cortés, madre del apelante, con quien sostiene una relación de afectividad análoga a la conyugal desde 1995. Afirmó que la residencia de la pareja, sita en el barrio Jagüeyes de Villalba, fue construida con los bienes de ambos, sobre un predio heredado a la dama.[17] El inmueble tiene un sótano, en el que el señor Jara López vive sin costo y de manera intermitente. Al momento del testimonio, hacía un año que el señor Jara López había regresado de Estados Unidos para quedarse.[18] El testigo identificó al apelante en la Sala del TPI.[19] De éste, dijo que tenía 47 años y que desconocía a qué se dedicaba.[20]

En cuanto a los hechos imputados, el 3 de agosto de 2024, el señor Colón Rivera narró que se encontraba en la casa de Reinaldo López Cortés, hermano de su pareja, realizando unas tareas en el techo. Ambas residencias son cercanas. Alrededor de las 9:30 de la mañana, el señor López Cortés salió por el desayuno. Entonces, el apelante pasó en su vehículo por el frente de la casa de aquél, viró y volvió. El señor Colón Rivera atestiguó que el señor Jara López se detuvo alineado frente a la residencia y, desde el interior del auto, le gritó al perjudicado,

---

[15] Véase, la Sección 1 de la Ley Núm. 75 de 24 de julio de 2025; además, refiérase al Artículo 3, inciso (5), de la Ley Núm. 121-2019, *Carta de Derechos y la Política Pública del Gobierno a favor de los Adultos Mayores*, 8 LPRA sec. 1513 (5).

[16] La fecha de nacimiento es el 23 de junio de 1954; TPO, pág. 7 líneas 26-31.

[17] TPO, págs. 8 líneas 7-10; 24-26; 19 líneas 25-31; 20 líneas 1-11.

[18] TPO, págs. 8 líneas 11-18, 27-30; 9 líneas 6-10; 19 líneas 8-9.

[19] TPO, pág. 8 líneas 19-22.

[20] TPO, págs. 9 líneas 15-22; 19 líneas 10-11.

en tono alto: "[M]ira, cabrón, me voy a cagar en tu madre, te voy a matar y va a ser pronto".[21] Luego, continuó la marcha en su Toyota Camry marrón.[22]

El señor Colón Rivera explicó que se sintió amenazado y tuvo temor de que el apelante lo fuera a matar o a golpear.[23] Dijo que conocía al apelante y que éste era agresivo.[24] Al regresar el señor López Cortés, el declarante afirmó que le contó lo sucedido, caminó hasta su hogar y se encerró con la señora López Cortés, porque tenía temor de que el apelante les hiciera daño. Continuaron encerrados el domingo siguiente.[25] Declaró que, en ese periodo, el señor Jara López se quedó en el sótano.[26]

El lunes, 5 de agosto de 2024, el señor Colón Rivera acompañó al señor López Cortés a hacer unas gestiones en el Banco Popular de Villalba. Mientras el testigo esperaba de pie en la acera, frente a la puerta de la institución financiera, narró que el señor Jara López se presentó, detuvo un poco su vehículo en la calle, sacó la cabeza por la ventana del carro y a gritos realizó unas expresiones similares: "Mira, cabrón, me cago en tu madre, te voy a matar y va a ser pronto". Siguió y se fue.[27] Nuevamente, el señor Colón Rivera sintió temor de que el apelante le hiciera daño.[28] En esa ocasión, decidió realizar una querella. "... porque eso no podía seguir así, porque yo a él no le he hecho na' pa' que me esté amenazando".[29]

El señor Colón Rivera apuntó que, en el pasado, tuvo una buena relación con el apelante, pero dijo que éste cambió. Por ejemplo, bloqueaba la salida de la casa y echaba a la visita. En el 2013, el testigo

---

[21] TPO, págs. 9 líneas 23-31; 10, en particular líneas 26-27.
[22] TPO, pág. 13 líneas 17-22.
[23] TPO, pág. 12 líneas 19-22.
[24] TPO, pág. 12 líneas 23-24.
[25] TPO, págs. 12 líneas 27-31; 13 líneas 1-6, 23-30; 14 líneas 1-2.
[26] TPO, pág. 17 líneas 19-23.
[27] TPO, págs. 14 líneas 2-23; 15 líneas 25-31; 16 líneas 1-7.
[28] TPO, pág. 16 líneas 8-9, 13-14.
[29] TPO, pág. 17 líneas 1-4.

interpuso una orden de protección contra el señor Jara López por sus amenazas.[30]

En el turno de contrainterrogatorio, en esencia, se corroboró parte de lo antes declarado. En lo que atañe, que el apelante era agresivo con otras personas.[31] El testigo aseveró que, sin motivo el 3 el agosto de 2024, el señor Jara López lo insultó a él y a su pareja, pero que ninguno le contestó.[32] Esa conducta ocurría a menudo.[33] Asimismo, reiteró que la amenaza iba dirigida a él y que sintió temor por su vida.[34] Empero, no identificó a algún testigo de los incidentes narrados ni pidió auxilio dentro del Banco Popular, por los hechos relatados del 5 de agosto de 2024.[35] Insistió, sin embargo, en la identificación del apelante como la persona que lo amenazó.[36]

### Agte. Noel Rentas Barrios

El agente Rentas Barrios (36107) recibió las declaraciones del señor Colón Rivera en el cuartel de Villalba el 5 de agosto de 2024.[37] Como resultado de la querella, el declarante arrestó al apelante, sin resistencia.[38] "Le indiqué que estaba siendo objeto de una investigación sobre un alegado maltrato de anciano".[39] Leyó las advertencias de rigor y se dirigieron al cuartel de Villalba.[40] El señor Jara López ejerció su derecho de mantenerse en silencio.[41]

A preguntas del Ministerio Público, el agente Rentas Barrios indicó que no solicitó las cámaras de seguridad del Banco Popular porque priorizó la seguridad del perjudicado.[42] Cuestionado por la

---

[30] TPO, págs. 18 líneas 28-31; 19 líneas 1-5, 12-19. *Orden de Protección, sobre Ley contra el Acecho*, JAOP2013-154, por eventos acontecidos el 6 y 7 de marzo de 2013; véase, *Informe Pre-Sentencia*, pág. 5.
[31] TPO, pág. 20 líneas 24-28.
[32] TPO, págs. 20 líneas 29-31; 21 líneas 1-17.
[33] TPO, pág. 21 líneas 18-19.
[34] TPO, pág. 23 líneas 5-11.
[35] TPO, págs. 24; 26 líneas 24-26.
[36] TPO, págs. 30 líneas 29-31; 31 líneas 1-5; 32 líneas 1-12.
[37] TPO, págs. 34-36.
[38] TPO, págs. 37 líneas 4-7; 38 líneas 3-5. El testigo declaró que, durante el arresto del apelante, la señora López Cortés salió y gritó "te lo buscaste". TPO, pág. 43 líneas 1-8.
[39] TPO, pág. 37 líneas 29-30.
[40] TPO, pág. 38 líneas 1, 7, 14-15.
[41] TPO, pág. 38 línea 21.
[42] TPO, pág. 38 líneas 26-31.

Defensa, atestiguó que no entrevistó al señor López Cortés porque éste no presenció los hechos delictivos imputados.[43] Reconoció que no realizó gestiones para corroborar la versión del señor Colón Rivera.[44]

**IV.**

En la causa de autos, el señor Jara López plantea que el TPI incidió al condenarlo, ya que sostiene que la evidencia no derrotó su presunción de inocencia ni estableció su culpabilidad más allá de duda razonable. Caracteriza la prueba desfilada como insuficiente y descarnada. Tildó de libreto o estribillo la alegada expresión amenazante —idéntico contenido vertido en dos días distintos y sin testigos— y que no se probó que ésta fuera dirigida al señor Colón Rivera. Adicionó que la expresión atribuida: "Mira, cabrón, me cago en tu madre; te voy a matar y es pronto", no cumplió con el segundo elemento del delito de *amenaza*, en referencia a la falta de peligro o intranquilidad del testigo de cargo al escuchar las manifestaciones en su contra. Ello así, porque en el primer incidente éste permaneció en el mismo lugar 15 o 20 minutos donde recibió las imputadas amenazas y luego regresó a pie a la misma casa donde el apelante continuaba viviendo en el sótano. Además, arguye que no hubo otro incidente como éste.

Añade que la veracidad de la evidencia no fue corroborada. Por ejemplo, el agente Rentas Barrios no indagó si había cámaras en los alrededores de la institución bancaria donde ocurrió el segundo incidente ni entrevistó al cuñado del señor Colón Rivera o alguna persona que hubiera presenciado lo alegado por el perjudicado. Tampoco se aludió a actos tendentes a realizar el daño anunciado ni que el señor Jara López tuviera la aptitud de ejercerlos.

---

[43] TPO, págs. 40 líneas 27-30; 41 líneas 1-7.
[44] TPO, pág. 42 líneas 11-20.

Del mismo modo, en observancia a preceptos constitucionales que propenden a la rehabilitación moral y social de los delincuentes,[45] el señor Jara López aboga por una pena proporcional a la gravedad del daño, como dispone también el Artículo 11 de nuestro Código Penal, 33 LPRA sec. 5011. Afirma que la sanción de seis (6) años es excesiva y no guarda proporcionalidad. Por ejemplo, indica que el inciso (n) del Artículo 66 del Código Penal de 2012, 33 LPRA sec. 5099 (n), establece como agravante la vulnerabilidad de la víctima por ser, entre otros supuestos, una persona de edad avanzada. En esos casos, el Artículo 67 del cuerpo legal, 33 LPRA sec. 5100, dispone que la pena fija establecida se incremente hasta un veinticinco por ciento (25%). Partiendo de la comisión del delito menos grave de *amenaza* tipificado en el Artículo 177, *supra*, que apareja con una pena de seis (6) meses, se añadiría un mes y medio (1.5); mientras que en la modalidad grave, penalizado por un término fijo de tres (3) años, se sumarían unos nueve (9) meses. Por ello, en consideración al *Informe Pre-Sentencia*, la rehabilitación del convicto y la seguridad de la comunidad, invoca el ordenamiento penal para que el TPI combine o sustituya su condena (menor de ocho (8) años) por una sanción de restricción terapéutica u otra afín. Véanse, Arts. 63-64 del Cód. Penal, 33 LPRA sec. 5096-5097 y Reglas 162.1-162.3 de Procedimiento Criminal, 34 LPRA Ap. II, Rs. 162.1-162.3. En particular, el señor Jara López enfatiza que, en el *Informe Pre-Sentencia*, se recomendaron alternativas a la reclusión carcelaria, pero que, en una alegada manifestación de abuso de discreción, el TPI se negó a concederlo.

En lo que concierne al *Informe Pre-Sentencia*, el Técnico Sociopenal Reyes Font mencionó la viabilidad de que el señor Jara López se beneficiara de la libertad a prueba.[46] Según surge del documento, el apelante fue aceptado, bajo determinadas condiciones,

---

[45] Art. II, Sec. 19, Const. PR, LPRA Tomo 1.
[46] Véase, *Informe Pre-Sentencia*, pág. 8.

en un programa en el Hogar CREA, por el término de veinte (20) meses, sufragado por el Departamento de Corrección y Rehabilitación, para recibir servicios con el fin de lograr su rehabilitación a través de la modificación de conducta.[47]

En cuanto a lo anterior, del *Informe Pre-Sentencia* se desprende que el señor Colón Rivera y la madre del apelante expresaron estar de acuerdo con el ingreso al programa en el Hogar CREA. Se consignó en el documento, sin embargo, que el apelante mostraba una conducta errática, lo que se relacionaba con el uso de bebidas embriagantes. Asimismo, se informó sobre la agresividad del apelante y el temor por la vida y seguridad del perjudicado y la madre del señor Jara López. En suma, se indicó sobre la falta de oposición a que el señor Jara López se beneficie de cualquier privilegio a considerar. Ahora, por razones obvias, era improcedente que éste residiera bajo el mismo techo o se acercara al perjudicado o su pareja.[48]

En el **primer y segundo señalamientos de error**, en esencia, el señor Jara López plantea la insuficiencia de la prueba y la ausencia de evidencia capaz de derrotar la presunción de inocencia que lo cobija, más allá de duda razonable. No le asiste la razón.

Conforme el Artículo 127-B del Código Penal de 2012, *supra*, se imputaron dos (2) cargos contra el apelante por "[amenazar] a una persona de edad avanzada con causarle daño determinado a su persona...". En su defensa, el apelante dice que el perjudicado no se sintió amenazado al escuchar las expresiones imputadas; a saber: "Mira, cabrón, me cago en tu madre, te voy a matar y va a ser pronto".

Es nuestra opinión que la expresión antes citada advierte sobre un daño específico y determinado a la integridad corporal y vida del perjudicado. De las declaraciones que desfilaron en el juicio, el señor Colón Rivera —quien tenía setenta (70) años en el momento de los

---

[47] *Id.*, págs. 7-8.
[48] *Id.*, págs. 10-11.

hechos— atestiguó que, luego del primer incidente ocurrido un viernes, se dirigió a su hogar, donde él y su pareja se encerraron hasta el domingo, precisamente, porque tenían temor de que el apelante les hiciera algún daño. El lunes siguiente, cuando aconteció el segundo incidente, el perjudicado hizo la querella, debido al temor que el apelante cumpliera su amenaza. Debemos concluir que, contrario a lo argüido, el señor Colón Rivera sí tuvo temor e intranquilidad al escuchar las manifestaciones en su contra, por parte del apelante, a quien identificó durante el juicio en su fondo, por lo que se cumplieron todos los elementos del delito de amenaza contra una persona de edad avanzada y su conexión con el apelante.

En cuanto a la suficiencia de la prueba, tildada como flaca y descarnada, si bien no hubo otra corroboración durante la investigación del Agte. Rentas Barrios, es sabido que el testimonio del perjudicado, al que el TPI le confirió entera credibilidad, por sí solo, es suficiente en derecho para probar la comisión de ambos cargos del delito imputado. Este foro intermedio no sólo leyó la transcripción de oficio, sino que escuchó la regrabación de la vista, de la cual no surgen razones para intervenir con la determinación del TPI. Por el contrario, procede que otorguemos deferencia a la manera de aquilatar la prueba testifical, ya que el juzgador de hechos, distinto a esta curia, se benefició de las expresiones corporales y faciales que acompañaron las declaraciones del señor Colón Rivera, para creer en el testimonio vertido en corte abierta, al relatar los hechos delictivos y describir al apelante como una persona agresiva.

En el **tercer y cuarto señalamientos de error**, en síntesis, el señor Jara López alega que el TPI abusó de su discreción al denegar la pena alterna de reclusión terapéutica,[49] a pesar de las

---

[49] El Artículo 53, *Restricción Terapéutica*, 33 LPRA sec. 5086, dispone en lo pertinente:
La pena de restricción terapéutica consiste en la restricción de la libertad por el término de tiempo y en el lugar que se fije en la sentencia para que el convicto se someta a un régimen de restricción y tratamiento, de manera que

recomendaciones en el *Informe Pre-Sentencia*, infringiendo con ello el postulado constitucional de posibilitar la rehabilitación moral y social de los delincuentes.[50] Sostiene que la pena de seis (6) años por el delito imputado es contraria a la disposición constitucional que proscribe la imposición de castigos crueles e inusitados.[51] No nos persuade.

Conforme reseñamos, por la probada comisión de los cargos delictuales los días 3 y 5 de agosto de 2024, el señor Jara López fue condenado a extinguir de manera concurrente sendas penas carcelarias "...por un término fijo de seis (6) años". El apelante las califica como unas penas excesivas y no proporcionales. Empero, es nuestro criterio que el asunto esbozado por el apelante, acerca de la severidad de la sanción penal, si bien es válido, se trata de una mera opinión, cuya atención compete a la Rama Ejecutiva y a la Asamblea Legislativa. Recuérdese que son éstas las que por décadas han promulgado la política pública protectora a las personas de edad avanzada, así como la tipificación de los delitos y las penas con las que

---

pueda obtener la intervención terapéutica, el tratamiento rehabilitador y la supervisión necesaria para su cumplimiento.

Esta pena es sustitutiva a la pena de reclusión señalada en el delito tipo, sujeta a las condiciones establecidas en este Artículo. La misma puede combinarse con la pena de reclusión y otras penas sustitutivas de la misma. En el caso de que combine esta pena con una o más de las penas sustitutivas de reclusión o con la pena de reclusión, deberá asegurarse de que el total de años de duración de las penas que combinó no exceda el término estatutario del delito tipo por el que resultó convicto.

Al imponer esta pena se considerarán, entre otros, los siguientes factores: la disposición a someterse a tratamiento, la condición de salud del sentenciado, la necesidad de tratamiento y de supervisión, la posibilidad de rehabilitación y el riesgo y beneficio para la comunidad.

La ejecución de esta pena corresponde al Departamento de Corrección y Rehabilitación que, sujeto a la reglamentación que adopte, supervisará el cumplimiento del plan de rehabilitación que forme parte de la sentencia.

En el caso en que el sentenciado incumpla la pena de restricción terapéutica cumplirá la totalidad de la sentencia de reclusión, salvo que en la vista de revocación, el juez, a su discreción, podrá abonarle parte del tiempo ya cumplido.

Si el convicto cumple satisfactoriamente con el tratamiento y el plan de rehabilitación y, al término de su sentencia, el tribunal concluye que efectivamente se ha rehabilitado de su condición de adicción a sustancias controladas, alcohol o al juego, podrá decretar el sobreseimiento del caso y la exoneración del sentenciado.

Esta pena no está disponible para sustituir la pena de reclusión en personas convictas por delitos graves cuyo término de reclusión señalado en el tipo sea mayor de ocho (8) años, excepto se trate de un delito cometido por negligencia.

[50] Art. II, Sec. 19, Const. PR, LPRA Tomo 1.
[51] Art. II, Sec. 12, Const. PR, LPRA Tomo 1.

aparejan.[52] Por ende, estimamos que se trata de una cuestión política, no justiciable por este foro revisor.

Claro está, sí podemos revisar las alegaciones de que el TPI supuestamente abusó de su discreción al denegar la pena de restricción terapéutica, a pesar de las recomendaciones en el *Informe Pre-Sentencia*. Al respecto, se desprende de los autos que el Ministerio Público no estuvo conteste con la sugerencia del documento. Aseveró que el apelante ya se había beneficiado de una remota probatoria en el 1998, ocasión en que fue imputado por una tentativa de escalamiento agravado.[53] El TPI enfatizó que el apelante, quien dijo que consumía marihuana medicinal para la ansiedad,[54] no presentaba un problema de dependencia al uso de sustancias controladas, aunque sí de alcohol. Además, que dicho uso de cannabis lo descartaba para recibir servicios en el Hogar CREA. Acotó que el *Informe Pre-Sentencia* revelaba que el señor Jara López tenía un problema de conducta.[55] Así, pues, impuso la pena fija de seis (6) años en cada cargo del Artículo 127-B del Código Penal de 2012, pero para cumplirlas de manera concurrente entre sí.

Ponderamos que el TPI no erró al dejar de acoger las recomendaciones del *Informe Pre-Sentencia*. El juzgador no está obligado a imponer la pena sugerida en el referido documento. Al contrario, le asiste amplia discreción de aceptar o rechazar las recomendaciones allí consignadas. Es decir, aun cuando el Sociopenal Reyes Font favoreció un programa en el Hogar CREA, el TPI no estaba atado a dicho curso de acción, sino que, en el ejercicio de su sana discreción, podía imponer la pena apropiada. En este caso, la sanción

---

[52] El 12 de julio de 1986, la Asamblea Legislativa promulgó la hoy derogada Ley Núm. 121, *Carta de Derechos de la Persona de Edad Avanzada en Puerto Rico*, 8 LPRA ant. sec. 341, *et seq.*, cuya última enmienda fue la Ley Núm. 138 de 8 de agosto de 2014, la cual introdujo varios delitos al Código Penal de 2012, dirigidos a la protección de los adultos mayores. Actualmente, rige la Ley Núm. 121 de 1 de agosto de 2019, *Carta de Derechos y la Política Pública del Gobierno a Favor de los Adultos Mayores*, 8 LPRA sec. 1511, *et seq.*

[53] Véanse, *Minuta* de la vista para dictar sentencia, celebrada el 10 de diciembre de 2024, en los Autos JEC2024G0048, pág.50; así como el *Informe Pre-Sentencia*, pág. 3.

[54] Véase, *Informe Pre-Sentencia*, pág. 5.

[55] Véanse, *Minuta, op cit.*

carcelaria impuesta equivale a la fijada por la ley, por lo que no intervendremos con el criterio del juzgador al imponerla.

Luego de un examen sosegado del expediente, concluimos con certeza moral y firme convicción que el apelante incurrió en la conducta tipificada en el Artículo 127-B del Código Penal de 2012, *supra*, por lo que el TPI no erró al así determinarlo. Como indicamos, no hallamos razón para intervenir con la valoración impartida por el TPI a la prueba testifical desfilada, la cual le mereció entera credibilidad, no fue controvertida y, por sí sola, es suficiente en derecho. Tampoco vemos razones para intervenir con la sanción fija impartida, ya que así se encuentra estatuida en el Código Penal de 2012. Si bien en el *Informe Pre-Sentencia* se pautan unas recomendaciones que se abstraen de la pena fija carcelaria, lo cierto es que el TPI explicó las razones para descartar esa vía. En resumen, a la luz de las circunstancias presentes, el apelante no estableció que el TPI haya actuado de manera arbitraria, con pasión, prejuicio o parcialidad; ni que la evidencia no haya concordado con los hechos imputados y probados. Por consiguiente, procede refrendar la declaración de culpabilidad por tribunal de derecho de dos (2) cargos, tipificados en el Artículo 127-B del Código Penal de 2012, *supra*, y de igual forma confirmar la pena según impuesta por el foro primario.

**V.**

Por los fundamentos expuestos, confirmamos las *Sentencias* apeladas.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones